Entered: November 19th, 2026
Signed: November 19th, 2026

NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

| | |
|---|---|
| In re: | |
| MATTHEW R. MCCARTNEY, | Case No. 25-20703-NVA |
| Debtor. | Chapter 7 |

**OPINION IN SUPPORT OF ORDER DENYING**
**MOTION TO ENFORCE STAY AND IMPOSE SANCTIONS**

Before the Court is the *Debtor's Motion to Enforce the Automatic Stay and for Sanctions* (the "Motion") and four related papers: (i) exhibits to the Motion filed by the debtor, Matthew McCartney; (ii) *Stephen L. Harker's Opposition to Debtor's Motion to Enforce Automatic Stay and for Sanctions and Request for Hearing* (the "Opposition"); (iii) *Creditor Stephen L. Harker's Case List and Brief Memorandum*; and (iv) Mr. McCartney's *Post-Hearing Bench Brief*. [ECF Nos. 49, 51, 53, 65, 66, 67]. An evidentiary hearing was held on August 26, 2026, and the parties submitted additional briefing following the hearing. For the reasons explained in this ruling, the Court will deny the Motion by separate Order.

**JURISDICTION**

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334. The United States District Court for the District of Maryland referred this case and related matters to this Court

pursuant to 28 U.S.C. § 247(a) and its Local Rule 402. This proceeding involves claims that are statutorily core under 28 U.S.C. § 157(b)(1) and (b)(2). This Court has constitutional authority to enter final orders in this proceeding. To the extent this Court lacks such constitutional authority, this decision constitutes the Court's report and recommendation.

## FACTUAL BACKGROUND

The relevant facts are not in dispute. On August 9, 2024, Mr. McCartney filed suit in the Circuit Court for Baltimore City (the "State Court") initiating Case No. C-24-CV-24-001957 (the "State Court Case").[1] On February 19, 2025, Mr. McCartney filed an amended complaint adding Stephen L. Harker as a defendant. The State Court dismissed the claims against Mr. Harker on June 11, 2025, after which Mr. Harker sought an award of attorneys' fees in the State Court Case. On August 29, 2025, the State Court entered an order directing Mr. McCartney to pay $37,743.00 to Mr. Harker's attorneys—The Michael Glass Law Firm. Mr. McCartney failed to pay the fees as ordered and, on October 24, 2025, Mr. Harker filed a motion in the State Court Case to reduce the awarded fees to judgment.

On November 15, 2025, only after Mr. Harker asked the State Court to reduce the awarded fees to judgment, Mr. McCartney filed a voluntary petition under chapter 7 of the Bankruptcy Code initiating this case. The next day, Mr. McCartney filed a suggestion of bankruptcy in the State Court Case and the State Court entered an order staying the State Court Case. Mr. Harker did not file anything in furtherance of his motion for judgment after the initiation of this bankruptcy case. Nonetheless, and notwithstanding this bankruptcy case and its own order, on January 31,

[1] The claims raised in the State Court Case are not relevant to the matters before this Court, but the timing of events in the State Court Case are germane and the relevant details are recited herein.

2026, the State Court entered judgment against Mr. McCartney for the previously-ordered attorneys' fees (the "Judgment").

On May 4, 2026, the Court entered an Order of Discharge granting Mr. McCartney a bankruptcy discharge pursuant to section 727 of the Bankruptcy Code. [ECF No. 43]. Mr. McCartney, via counsel, sent a letter to Mr. Harker's counsel on May 20, 2026, demanding that Mr. Haker seek vacatur of the Judgment as violative of the automatic stay imposed by the Bankruptcy Code. Mr. Harker's counsel did not seek vacatur of the Judgment and, on May 27, 2026, Mr. McCartney filed his own motion to vacate in the State Court. Mr. Harker responded to and opposed Mr. McCartney's motion on June 28, 2026. The State Court held a hearing and ultimately vacated the Judgment.

## ANALYSIS

By his Motion, Mr. McCartney seeks enforcement of the automatic stay and associated damages. *See generally* the Motion [ECF No. 49]. At the August 26 hearing, Mr. McCartney argued that Mr. Harker and his counsel violated the automatic stay *and* the discharge injunction and sought enforcement—including associated damages—of both.[2]

When a debtor files his bankruptcy petition, the Bankruptcy Code protects the debtor through, *inter alia*, the imposition of an automatic stay on efforts to collect prepetition debts. *City of Chicago v. Fulton*, 592 U.S. 154, 156 (2021); 11 U.S.C. § 362(a). The automatic stay is a central pilar of the bankruptcy process.

> The stay provides the debtor with relief from the pressure and harassment of creditors seeking to collect their claims. It protects property that may be necessary for the debtor's fresh start and, in terms of a debtor in a chapter 11, 12, or 13 case, provides breathing space to permit the debtor to focus on

[2] While the Motion makes no reference to the discharge injunction as grounds supporting the relief requested therein, respondent clearly was aware that the discharge injunction is at issue because his written opposition includes arguments related to the discharge injunction. *See* the Opposition at 2, 8-9 [ECF No. 53].

> rehabilitation or reorganization. In addition, the stay provides creditors with protection by preventing the dismemberment of a debtor's assets by individual creditors levying on property. [The stay, therefore,] promotes the bankruptcy goal of equality of distribution.

3 Collier on Bankruptcy ¶ 362.03 (16th ed. 2026). The stay serves to "maintain the status quo and prevent dismemberment of the estate during the pendency of the bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 42 (2020).

As relevant here, the automatic stay prohibits

> the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case[,] or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . ;
>
> any act to create, perfect, or enforce any lien against property of the estate; [and]
>
> any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy] case.

11 U.S.C. § 362(a)(1), (4), (5). The automatic stay does not continue in perpetuity, however. As is pertinent here, the automatic stay continues only until the debtor receives a discharge. 11 U.S.C. § 362(c)(2)(C).

While the automatic stay terminates upon the entry of a discharge, other protections then snap into being for the benefit of the debtor. A bankruptcy discharge both "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged" and "operates as an injunction against the commencement or continuation of an action . . . to collect, recover, or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(1), (2).

Here, Mr. McCartney argues that Mr. Harker and his counsel violated both the automatic stay and the discharge injunction. The automatic stay was violated, Mr. McCartney argues, when

the State Court entered the Judgment against him and Mr. Harker and his counsel did not seek vacatur of that Judgment. The discharge injunction was violated, according to Mr. McCartney, by Mr. Harker's failure to seek vacatur of the Judgment *and* by the filing of Mr. Harker's opposition to Mr. McCartney's vacatur motion in the State Court.[3] Mr. McCartney is incorrect on both theories.

*I. Mr. Harker's failure to seek vacatur of the State Court Judgment was violative of neither the automatic stay nor the discharge injunction*

In support of his argument that both the automatic stay and discharge injunctions were violated by Mr. Harker's failure to seek vacatur of the Judgment, Mr. McCartney advances the theory that *all* creditors have an affirmative duty to seek vacatur of *any* judgment entered in violation of the automatic stay or the discharge injunction. In support of his theory, Mr. McCartney cites cases relating to a creditor's obligations under the automatic stay, but those cases do not support the expansive theory Mr. McCartney advances. They likewise cannot support Mr. McCartney's theory of discharge injunction violations.

Until relatively recently, a split of authority existed among the circuits regarding a creditor's affirmative obligation under the automatic stay to return to the debtor property obtained pre-petition because, some courts held, the mere retention of possession of estate property violates the automatic stay pursuant to section 362(a)(3). *Fulton*, 592 U.S. at 157. The Supreme Court resolved that split of authority in 2021 and held that the "mere retention of estate property after the filing of a bankruptcy petition does not violate section 362(a)(3) of the Bankruptcy Code." *Id.* at 161–62. The Court's holding was narrow. *Id.* 592 U.S. at 161 ("Nor do we settle the meaning

[3] Because Mr. Harker's opposition in the State Court was filed after Mr. McCartney received his bankruptcy discharge, it cannot, as a matter of law, be violative of the automatic stay because the automatic stay did not exist at that time.

of other subsections of 362(a).”). Nonetheless, *Fulton* informs how the implementation of the remaining aspects of the automatic stay are to be resolved.

Mr. McCartney cites a number of cases for the proposition that *every* creditor has an affirmative duty—imposed by the automatic stay—to seek vacatur of *any* judgment in favor of the creditor entered in violation of the automatic stay. *See e.g.*, *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340 (Bankr. S.D.N.Y. 1998); *Keen v. Premium Asset Recovery Corp. (In re Keen)*, 301 B.R. 749 (Bankr. S.D. Fla. 2003); *In re Braught*, 307 B.R. 399 (Bankr. S.D.N.Y. 2004). These cases, however, do not support Mr. McCartney’s expansive theory of the automatic stay—if they ever did—in light of *Fulton*. At least one decision—cited by Mr. McCartney—considered a party’s affirmative obligation to act post-*Fulton*. *See Connor v. Prop. Fund 629, LLC (In re Connor)*, 641 B.R. 875 (Bankr. M.D. Tenn. 2022). There, the court noted that *Fulton* identifies that a central pillar of the automatic stay is the preservation of the status quo as of the petition date. *Connor*, 641 B.R. at 881-82. The *Connor* court then found the responding party’s reliance on *Fulton* misguided because the status quo had been disturbed—the debtor was evicted—post-petition. *Connor*, 641 B.R. at 884. Nonetheless, the *Connor* court declined to impose sanctions because the violation of the stay was not willful. *Id.* 641 B.R. at 886 (“The stay violation claim also fails for a lack of willfulness. . . . Willfulness requires an intent to perform the act or an intentional decision not to act when one knows of an affirmative duty to act.”). In doing so, the *Connor* court suggests what this Court will now say explicitly: a debtor harmed by an act violative of the automatic stay may be unable to obtain damages from the creditor who receives the benefit of the violative act absent willfulness.

This result, consistent with the language of the Bankruptcy Code, is faithful to both Congressional direction and the American rule regarding attorneys’ fees.

> Generally, the American rule governs the awarding of attorneys fees in federal courts. *F.D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 126 (1974). The American rule provides that each party should bear the cost of his own legal fees. *Id.*, 417 U.S. at 129. Attorneys' fees may also be awarded incident to a statute or contract which provides for such fees. There are three judicially created exceptions to the American rule based on the inherent equitable powers of a court: (1) when the litigant preserves or recovers a fund for the benefit of others; (2) when a losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons; or (3) when a defendant willfully disobeys a court order. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975).

*In re Brantley*, 116 B.R. 443, 449 (Bankr. D. Md. 1990). In other words, awarding attorneys' fees to a party is, at minimum, similar to awarding other damages.

> To determine whether Congress intended to depart from the American rule presumption [that each party bear his own legal fees], the Court first looks to the language of the section at issue. While the absence of a specific reference to attorneys' fees is not dispositive, Congress must provide a sufficiently 'specific and explicit' indication of its intent to overcome the American rule's presumption against fee shifting.

*Peter v. NantKwest, Inc.*, 589 U.S. 23, 30 (2019) (internal quotations and citations omitted). After all, courts expect clear and direct language from Congress when Congress means to take a major departure from precedent—Congress does not hide elephants in mouseholes. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017) (holding that Congress would have used direct language if it intended that structured dismissal of bankruptcy cases be permitted to achieve non-consensual, priority-violating distributions in chapter 7 and 11 cases).

In the case *sub judice*, Congress explicitly provides for a departure from the American rule. Section 362 states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). But Mr. McCartney's reading of this language goes too far. It is his theory that he can recover attorneys' fees from Mr. Harker because the State Court entered the Judgment in violation of the automatic stay. This reading does

much more than shift the burden for legal fees; it does violence to the American rule because, at bottom, it shifts the burden to litigate in the first place. Mr. Harker took no action violative of the automatic stay. To be sure, the State Court did, but Mr. Harker did not. Mr. Harker filed his motion to reduce the awarded fees to judgment, but that was before this bankruptcy case was filed. Mr. McCartney notified the State Court of this bankruptcy case and the State Court stayed the State Court Case. In violation of the automatic stay, and perhaps in violation of its own order staying its case, the State Court entered the Judgment against Mr. McCartney. Under Mr. McCartney's interpretation of section 362, the *only* way for Mr. Harker to avoid liability to Mr. McCartney for attorneys' fees would be for Mr. Harker to file and prosecute his own motion to vacate the violative judgment. And it is precisely Mr. Harker's failure to do so that Mr. McCartney points to as the "willful violation" of the automatic stay. This logic is impermissibly circular. And if Congress meant to shift—from debtors to creditors—the burden to unwind actions other parties take in violation of the automatic stay, this Court would expect clearer language to that end. The Court understands how a debtor in Mr. McCartney shoes may be frustrated by this holding. Many of the cases Mr. McCartney cites suggest that the debtors sought relief from one party only because relief against another, perhaps more culpable, party was simply unobtainable. But that is not a reason to punish an innocent bystander party. Nor does this holding mean that no debtor can ever obtain damages against a creditor when the creditor does not seek vacatur of a judgment entered in violation of the automatic stay—just that the relief is unavailable in this case.

Because this Court finds that Mr. Harker had no duty to seek vacatur of the Judgment entered in the State Court Case and that Mr. Harker's failure to seek vacatur cannot be a willful violation of the automatic stay and because the State Court has already vacated the Judgment

violative of the automatic stay, the Court must deny the Motion as it pertains to the any relief pursuant to the automatic stay.

*II. Mr. Harker's defensive filing in the State Court was not violative of the discharge injunction*

The Court must also deny Mr. McCartney's requests to enforce the discharge injunction. Unlike in his attempt to enforce the automatic stay, Mr. McCartney can point to an act taken by Mr. Harker after the discharge injunction came into being—Mr. Harker filed an opposition to Mr. McCartney's motion to vacate the Judgment filed in the State Court. But this does not carry the day.

The section pertaining to the discharge injunction "does not expressly provide a remedy for a violation of the statutory injunction [and] federal courts have uniformly held that bankruptcy courts have authority under section 105(a) to enforce" the discharge injunction. *In re Mejia*, 559 B.R. 431, 442 (Bankr. D. Md. 2016). As of 2019, the standard for finding contempt of the discharge injunction is the same as for other injunctions—a finding that there was no fair ground for believing that the conduct complained of did not violate the injunction. *Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019). Here, Mr. Harker filed a responsive filing to a motion Mr. McCartney filed in the State Court. Mr. McCartney cites no legal authority for the proposition that a defensive filing *can be* the sole basis for a discharge injunction violation finding and this Court sees no reason to be the first to so find. Moreover, Mr. McCartney's request for legal fees is not supported by the language of the Bankruptcy Code. Unlike section 362, neither section 524 nor section 105 contains fee shifting language. Without such Congressional directive, the American rule stands and none of the three judicially created exceptions identified above apply. Therefore, Mr. McCartney may not recover his legal fees for his efforts to enforce the discharge injunction.

This result, at least in this case, is logical. Consider if Mr. McCartney instead moved in this Court for an order finding the State Court's Judgment was void as violative of the automatic stay and discharge injunction. An argument that a responsive pleading filed in this Court would give rise to sanctions for a discharge injunction violation would seem preposterous.[4] Because Mr. McCartney has not satisfied his burden of persuasion under *Taggart*—that no fair ground of doubt exists that Mr. Harker's actions violated the discharge injunction—or that the requested relief as to attorneys' fees is even an available remedy, the Court must deny the Motion as it seeks relief pertaining to the discharge injunction.

## CONCLUSION

Mr. McCartney filed a motion to enforce the automatic stay and later also argued that he is entitled to sanctions for violations of the discharge injunction. But Mr. McCartney is not entitled to the relief he seeks. First, his theory of the automatic stay violation is unsupported by the Bankruptcy Code and recent, binding case law. Second, it relies on flawed logic and does violence to the American rule on attorneys' fees. He is simply not entitled to relief as it pertains to Mr. Harker. As to the State Court's judgment, the State Court has already seen to that. Mr. McCartney is likewise not entitled to relief for violations of the discharge injunction because Mr. McCartney simply does not show that the complained of defensive conduct by Mr. Harker violates the discharge injunction. A separate order denying the Motion will follow.

cc: Debtor
Counsel for Debtor – Robert M. Stahl, IV
Counsel for Stephen L. Harker – Michael E. Glass

## END OF OPINION

[4] This is not to suggest that other remedies, for example those provided by Rule 9011 of the Federal Rules of Bankruptcy Procedure, could not be available.